WO

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Thomas Michael Riley, | ) | |
| Petitioner, | ) | CV-02-199-TUC-DCB |
| v. | ) | |
| | ) | |
| Terry L. Stewart, et al., | ) | **ORDER** |
| | ) | |
| Respondents. | ) | |
| | ) | |
| _____ | ) | |

### *INTRODUCTION*

This matter is now before the Court for consideration of Thomas Michael Riley's (Petitioner) Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 concerning his March 1998 jury trial conviction in the Arizona Superior Court, Pima County, Tucson, Arizona. For the reasons set forth below, the petition is DENIED as to all claims.

### *BACKGROUND*

I. *Case History*

On March 26, 1998, a jury found Petitioner guilty of armed robbery as alleged in Counts One to Six, each offense to be of a dangerous nature; found guilty of kidnaping as alleged in Counts 7 to 12, each offense to be of a dangerous nature; and found guilty of aggravated assault, with the use of a deadly weapon/dangerous instrument as alleged in Counts 13 to 18, each offense to be of a dangerous nature.

Petitioner was sentenced to 21 years on Count 1 to run concurrently with 21 years on Count 7, and 15 years on Count 13 to run currently with Counts 1 and 7.  Petitioner was sentenced to 21 years on County 2 to run concurrently with 21 years on Count 8, and 15 years on Count 14 to run concurrently with Counts 2 and 8.   Counts 2, 8 and 14 were to run consecutively to Counts 1, 7, and 13.  Petitioner was sentenced to 21 years on Count 3 to run concurrently with 21 years on Count 9, and 15 years on Count 15 to run concurrently with Counts 3 and 9.  Counts 3, 9, and 15 were to run consecutively to Counts 2, 8, and 14.  Petitioner was sentenced to 21 years on Count 4 to run concurrently with 21 years Count 10, and 14 years on Count 16 to run concurrently with Counts 4 and 10.  Petitioner was sentenced to 21 years on Count 5 to run concurrently with 21 years on Count 11, and 15 years on Count 17 to run concurrently with Counts 5 and 11.  Petitioner was sentenced to 21 years on Count 6 to run concurrently with 21 years on Count 12, and 15 years on Count 18 to run concurrently with Counts 6 and 12.  Counts 4, 10, 16, 5, 11, 17, 6, 12 and 18 were to run concurrently with all other Counts.

Petitioner filed a direct criminal appeal, which was denied by the Arizona Court of Appeals in a published opinion dated June 29, 1999.  *See State v. Riley*, 196 Ariz. 40 (Ariz.App. 1999).  On January 4, 2000, the Arizona Supreme Court denied review without comment.  The Mandate issued on February 2, 2000.

On February 16, 2000, Petitioner filed a Notice of Post-Conviction Relief with the state trial court.  On November 16, 2000, Petitioner filed a Petitioner for Post-Conviction Relief with the trial court pursuant to Ariz.R.Crim.P. 32.  On January 16, 2001, the trial court summarily denied the petition.  Petitioner filed a Petition for Review

and in a Memorandum Decision, the Arizona Court of Appeals denied relief on June 21, 2001. Petitioner did not seek review by the Arizona Supreme Court and the Mandate issued July 31, 2001.

Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 with this Court on April 23, 2002, CV-02-199-TUC-RCC.[1]  This petition was timely filed. 28 U.S.C. §2244(d)(2).  On February 28, 2003, Respondents filed an Answer to Petition for Writ of Habeas Corpus.

Petitioner raises ten habeas challenges to his conviction, as follows:

  1.Petitioner's rights under the Fourth Amendment were violated by the stop and seizure in New Jersey;

  2.Petitioner's rights under the Confrontation Clause of the Sixth Amendment were violated when the arresting officer was permitted to testify telephonically during the suppression hearing;

  3.Petitioner's rights under the Double Jeopardy Clause of the Fifth Amendment were violated when the trial court sentenced him six times for a single offense of robbery;

  4.Petitioner's rights under the Double Jeopardy Clause of the Fifth Amendment were violated when the trial court ordered consecutive sentences for offenses that arose out of a single incident;

---

[1]On June 10, 2005, this action was transferred to Judge Browning. On July 20, 2005, this action was transferred to Judge Bury.

5. Petitioner's rights under the Double Jeopardy Clause of the Fifth Amendment were violated when the trial court enhanced his sentences for the use of a gun;

6. Petitioner was punished in violation of his rights under the Fifth, Sixth and Fourteenth Amendments for failing to demonstrate remorse prior to his convictions and sentencing and for invoking his right to silence and to the presumption of innocence;

7. Petitioner's right to due process under the Fourteenth Amendment and to be free from Double Jeopardy were violated when the trial court punished him for "failure to change his ways";

8. Petitioner's right to due process under the Fourteenth Amendment was violated when the trial court punished him on Counts 4, 10, and 16 for the impact that the crimes would continue to have on the victims;

9. Petitioner was deprived of effective assistance of appellate counsel; and,

10. Petitioner is entitled to a hearing in federal court.

Claims 1 to 4 were addressed to the Arizona Court of Appeals on direct appeal. Claims 5 to 10 were raised for the first time in the state post-conviction relief proceedings. The state post conviction court summarily denied post-conviction relief because the claims were procedurally defaulted. Petitioner appealed. Petitioner cited ineffective assistance of appellate counsel as cause for the procedural default. The Court of Appeals found no showing of prejudice as they addressed the post-conviction claims on appellate review. Respondents concede that all

claims have been fairly exhausted with the state courts either by direct appeal or through post-conviction relief. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999), *cert.denied*, 529 U.S. 1009 (2000).

II. *Facts*

The following is a synopsis of the facts developed during Petitioner's criminal jury trial. On December 12, 1996, the Bank One branch at Swan and Sunrise in Tucson, Arizona, was robbed. As employees were entering to open the bank office, an armed gunman pushed one employee, a teller, into the building, pointing his gun at her and ordered her and the manager to lie on the floor. After they complied, another armed man came into the bank and tied their hands behind their backs. The first gunman, identified as Petitioner, pointed his gun at another employee and ordered her on the floor. The second gunman, co-defendant Donald Malone (Malone), grabbed her and told her to get on the floor. Malone pointed his gun at another teller and escorted him to where the other employees were lying face down and bound his hands behind his back. When another manager arrived, Malone pulled her inside and forced her lie face down on the floor while he tied her hands behind her back.

Petitioner held his gun to an employee's head and asked if she had keys to the automatic cash machine. She said that she did not. He asked her who had the combination. A manager said that she did and Petitioner, while pointing a gun at her, ordered her to open the machine. When she was unable to unlock the vault, she asked another employee to help her, who also had the combination. The vault opened and Petitioner made the two lie down again while he packed cash into a duffel bag. Petitioner and Malone then left the bank. Approximately $245,000 was taken in

bundles of cash, each bundle with a purple wrapper bearing the bank's markings, a date stamp of December 11, 1996 and a manager's initials.

Later, in January 1997, Petitioner and Malone were arrested for illegal possession of firearms after being stopped for speeding in South Brunswick, New Jersey, by police officer Frank Lombardo (Officer Lombardo). Malone, the driver, had approximately $4000 cash in his pocket, including a stack of fifty-dollar bills wrapped in a purple bank wrapper, date stamped December 11, 1996. Petitioner, the sole passenger in the front seat, had two guns tucked in his waistband. After obtaining a search warrant, the South Brunswick police discovered $160,000 in cash bundled in bank wrappers in Petitioner's and Malone's hotel room.

Petitioner and Malone were returned to Arizona for prosecution on the bank robbery. Federal prosecution was initially commenced, but after the State of Arizona requested that the federal government defer prosecution of the case, the State of Arizona commenced prosecution.

*DISCUSSION*

I. *Standard of Review*

Petitioner filed his Petition for Writ of Habeas Corpus in this Court on April 23, 2002. Accordingly, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes a "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). Under the AEDPA, a district court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted

- 6 -

with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the Untied States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state court decision." *Williams,* 529 U.S. at 412; *Alvarado v. Hill,* 252 F.3d 1066, 1068-9 (9th Cir. 2001). Section 2254(1) "restricts the source of clearly established law to the [Supreme] Court's jurisprudence." *Williams,* 529 U.S. at 412.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-13. "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412-13.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at

411. A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state-court record. *Taylor v. Maddox,* 366 F.3d 992, 1005 (9th Cir.), *cert.denied*, 125 S.Ct. 809 (2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *See Sumner v. Mata,* 449 U.S. 539, 546-47 (1981).

Habeas relief is warranted only if the constitutional error at issue is structural error or had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson,* 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993)). Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual" prejudice. *Brecht,* 507 U.S. at 637.

Where, as in this action, the Arizona Supreme Court denies review of Petitioner's claims without explanation, the Court looks to the last reasoned state court decision in conducting habeas review. *See Shackleford v. Hubbard,* 234 F.3d 1072, 1079 (9th Cir. 2000), *cert.*

*denied,* 354 U.S. 944 (2001) (the district court "looks through" the unexplained state supreme court decision to the last reasoned state court decision). The Arizona Court of Appeals rendered the last reasoned state court decisions both on direct criminal appeal and on the post-conviction relief proceedings in Petitioner's case.

II. *Legal Claims*

A. *Petitioner's rights under the Fourth Amendment were violated by the stop and seizure in New Jersey*

Petitioner argued that after Petitioner and Malone were stopped in New Jersey for speeding, the detention and search that followed were conducted without probable cause. Malone was stopped for speeding and no other offense. Once he produced the driver's license and insurance papers, there was no longer any reason to detain the driver and his passenger, Petitioner. The car was not listed as stolen when it was called in. Petitioner claimed that after "[h]aving concluded that there was no reasonable suspicion to detain the driver beyond the need to issue the speeding citation, the purpose of the stop ended and the police office was duty bound to send the two on their way." Petitioner goes on to explain that there was no reason to believe there was any other criminal activity afoot. Consequently, the evidence obtained from the illegal search after the stop, the bundles of cash and guns, as well as the evidence obtained from the search at the hotel room, should have been suppressed as fruit of the poisonous tree. For this reason alone, the writ should enter and the convictions should be reversed.

Respondents argue that Petitioner was afforded a full and fair hearing during the state court hearing on this issue. Pretrial motions and briefs were filed and a hearing with witnesses conducted.

Respondents maintain that Petitioner's constitutional rights were not violated during the stop and detention nor during the suppression hearing.   In any event, Respondents rely on *Stone v. Powell*, that a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial.   *Stone v. Powell*, 428 U.S. 465, 494 (1976).

The Arizona Court of Appeals specifically addressed this issue on direct appeal.   The Court looked in detail at the facts surrounding the stop, including the fact that Malone was driving in excess of 110 miles per hour, slowed down and sped up, before finally stopping in an extremely dark area, rather than a well lit area.   After the stop, the Petitioner/passenger ignored the police officer and kept his hand tucked under his jacket, even though the officer repeatedly asked him to keep his hands in view.   Initially, Malone could not produce a vehicle registration or proof of insurance and there were temporary tags on the car.   The officer then noticed a bulge in Malone's right pocket.   After a pat down, he found the bundle of cash.   He then separated the driver from the passenger.

Petitioner was not responsive at first to questioning and was asked to exit the vehicle.   At that time, the officer saw a bulge in the Petitioner's pants.   The officer then conducted a pat down at which point the officer found two handguns in the Petitioner's waistband.   The Arizona Court of Appeals, based on the above recitation of facts, found that, "[t]he trial court denied the motion to suppress, concluding that Lombardo had 'reasonable suspicion' to detain and question Malone and Petitioner and that the subsequent searches were justified by 'reasonable safety concerns.'"

The Arizona Court of Appeals went on to conclude that,

> Here, [the police officer] had reasonable grounds to continue his investigation.  Notwithstanding Malone's explanation that he had won the money in Atlantic City, the cash the officer discovered pursuant to a lawful pat-down search was still bound in a bank wrapper . . . Thus, the stop's purpose had not concluded when the police officer asked Malone to wait in the back of the patrol car.  *See United States v. Baron*, 94 F.3d 1312 (9th Cir.),[ *cert.denied*, 519 U.S. 1047 (1996)].

The Court of Appeals additionally found that, when Petitioner reached for his waistband in response to the police officer's question about weapons, the officer had reasonable concern for his safety which justified the patdown search.  The Court of Appeals reasoned that, "[i]n *Maryland v. Wilson*, 519 U.S. 408 (1997), the Supreme Court held that a police officer may, as a matter of course, order a passenger in a lawfully stopped vehicle to exit the car 'pending completion of the stop.'"

Petitioner was afforded a motion to suppress hearing before the state trial court and submitted a brief in support.  On March 11, 1998, the trial court issued a written ruling.  The trial court specifically addressed the evidence surrounding circumstances of the stop. Based on all of the suspicious behavior, Office Lombardo took safety precautions and conducted two patdown searches, which resulted in a bundle of cash and weapons.  He arrested Petitioner at the scene for the unlawful possession of two handguns.  After that he saw the butt of a shotgun underneath Malone's seat and he arrested him as well.  The trial court found that based on the facts surrounding the stop and the totality of the evidence, *see United States v. Cortez*, 449 U.S. 411 (1981), Officer Lombardo did not need a search warrant prior to looking inside of the vehicle, based on reasonable suspicion and safety concerns.  The trial court ruled, after hearing all of the evidence, that "[t]he detention of

the suspects was not unlawful and the search was justified by reasonable safety concerns." The trial court applied *Chimel v. California*, 395 U.S. 752, 763 (1969), in support of its ruling on the issue of the right of an officer to search a vehicle without a search warrant. The Court of Appeals later relied on *Maryland*, 519 U.S. at 414, to affirm that trial court's ruling.

Petitioner has not raised any questions which would lead this Court to question the factual findings of the trial court, affirmed by the state appellate court. Petitioner received a full and fair opportunity to convince the trial court to suppress the evidence obtained after this vehicle stop. Further, there is no unreasonable application of federal law, specifically *Chimel*, *Cortez*, and *Maryland*. In *Stone*, 428 U.S. at 484, the Supreme Court stated "we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." "Under *Stone*, a federal district court may not relitigate a fourth amendment issue tried fully and fairly in a state court, regardless of its view of the correctness of the state decision." *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977). The record of the state proceedings compels the conclusion that Petitioner received a full and fair opportunity to litigate his Fourth Amendment claims. The identical claims addressed here were squarely rejected by the Arizona Court of Appeals. The transcript of the evidentiary hearing on the motion to suppress alone consists of 92 typewritten pages. The issues were thoroughly briefed at the trial level and rejected. The briefs on appeal to the Arizona Court of Appeals are

substantial.  The opinion of the Arizona Court of Appeals is lengthy, and it indicates that Petitioner's contentions were carefully considered.

It is clear to this Court, therefore, that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claims in the state court, *Sumner*, 449 U.S. at 546-47, and that there was no unreasonable application of federal constitutional law.  Accordingly, Petitioner has failed to establish that he is entitled to habeas relief on this claim.

B. *Petitioner's rights under the Confrontation Clause of the Sixth Amendment were violated when the arresting officer was permitted to testify telephonically*

Petitioner argues that his rights under the Confrontation Clause were violated when the primary witness, the arresting police officer, Officer Lombardo, testified by telephone during the motion to suppress hearing.  Petitioner argues that he was deprived of a "face to face" confrontation and the Court was deprived of the opportunity to assess the demeanor and credibility of the witness.  In addition, the state demonstrated no compelling necessity for the telephonic procedure, which was not adequate due to technical difficulties.  Finally, the Petitioner argues that the appellate court was "terse" in its review of this issue and applied an unreasonable application of clearly established federal law to reach its conclusion.

Respondents take the position that a defendant's right to confront an accusatory witness may be satisfied absent a physical, face to face confrontation at trial.  *Maryland v. Craig*, 497 U.S. 836, 844 (1990).  Further, the interests at stake during a suppression hearing are less

- 13 -

than those in a criminal trial.   *United States v.  Raddatz*, 447 U.S. 667, 679 (1980).

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const., Amend. VI.   The federal confrontation right applies to the states through the Fourteenth Amendment. *See Pointer v. Texas,* 380 U.S. 400, 403 (1965).   The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *Crawford v.  Washington,* 541 U.S. 36(2004). The Confrontation Clause thus reflects a judgment, not only about the desirability of reliable evidence, but about how reliability can best be determined. *Crawford,* 541 U.S. at 61.   Confrontation Clause claims are subject to harmless error analysis. *United States v. Nielsen,* 371 F.3d 574, 581 (9th Cir. 2004).   For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. *See Hernandez v. Small,* 282 F.3d 1132, 1144 (9th Cir.), *cert.denied*, 537 U.S. 851 (2002).

The Arizona Court of Appeals noted that Petitioner and his attorney were present when the police officer testified telephonically and subjected him to thorough cross examination.   In addition, the police officer testified in person at the trial.   Petitioner did not again reassert any objection to the motion to suppress hearing during trial. The Arizona Court of Appeals concluded that "any infringement on Petitioner's confrontation rights was minimal and consequently could not say the trial court erred in permitting the telephonic testimony during the suppression hearing."   The Court went on to reason, that if a

Confrontation Clause violation had occurred, it was subject to the harmless error analysis, relying on *Delaware v. Van Arsdall*, 475 U.S. 673 (1986) and *Schneble v. Florida*, 405 U.S. 427 (1972). The police officer testified during the jury trial. The Court of Appeals finally reasoned that "[m]oreover, the evidence against Petitioner was overwhelming. All six victims positively identified him as the first armed gunman, and bank security cameras photographed him during the robbery. Thus, even if the trial court erred in allowing telephonic testimony at the suppression hearing, Petitioner was not prejudiced by the lack of face-to-face confrontation with the arresting officer."

Officer Lombardo was subjected to cross-examination during the suppression hearing and again when he appeared in person to testify during the trial. His testimony was the same in both proceedings. At trial, Petitioner did not again raise any questions regarding the Confrontation Clause. This Court finds no unreasonable application of federal constitutional law or actual prejudice to Petitioner. Accordingly, Petitioner is not entitled to habeas relief on his claim that his rights under the Confrontation Clause were violated during the suppression hearing.

C. *Petitioner's rights under the Double Jeopardy Clause of the Fifth Amendment were violated when the trial court sentenced him six times for a single offense of robbery*

Petitioner argues that it was preposterous that he was sentenced six times for one offense, robbery. As such, his constitutional right against Double Jeopardy was violated. In addition, this sentence violated Arizona precedent found in *State v. Strong*, 185 Ariz. 248 (Ariz.App. 1995). The Court of Appeals in Petitioner's direct criminal

appeal declined to follow *Strong*.  Petitioner claims that "[t]he taking of the property was effectuated by the concurrent commission of the aggravated assaults and the kidnapings perpetrated on the persons present in the bank.  The very acts of aggravated assault and the kidnapings were the added elements that made the theft of the money an armed robbery."  Relying on *United States v.  Dixon*, 509 U.S. 688 (1993), Petitioner urges the Court to find that multiple punishments based on the same conduct are only permissible if each offense contains proof of one separate element and no such separate elements were found here.

Respondents maintain that it is up to the legislature to authorize cumulative punishments and that a federal court must accept a state court's interpretation of legislative intent for multiple punishment purposes, citing *Missouri v.  Hunter*, 459 U.S. 359, 368 (1983).  The Arizona Court of Appeals that reviewed Petitioner's conviction rejected his statutory interpretation.  The reviewing court found that the plain language of A.R.S. §13-1902(A), made robbery a crime against a person, not against property.  The evidence at trial showed that Petitioner and Malone held guns on the six bank employees during the robbery, sufficed for finding robbery under the statute six times - one act of robbery for each bank employee.  Respondents explain that, in doing so, the Arizona Court of Appeals, Div.  II, took a different view of the statute than a panel of Div. I.  The Arizona Supreme Court upheld the Div.  II decision without comment.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. The Double Jeopardy

Clause protects against a second prosecution, and multiple punishments, for the same offense. *Witte v. United States,* 515 U.S. 389, 396 (1995); *United States v. Wolfswinkel,* 44 F.3d 782, 784 (9th Cir. 1995).

As a matter of clearly established federal law, the United States Supreme Court has regularly deferred to state court interpretations of state statutes. "A State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden,* 421 U.S. 200, 208 (1975). When a state court has made its own definitive determination as to the meaning of a state statute, federal courts give this finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive. *Id.* If the claim is solely based on the incorrect application of state law, that alone cannot support federal habeas relief. *See Christian v. Rhode,* 41 F.3d 461, 469 (9th Cir.1994); *see generally Pulley v. Harris,* 465 U.S. 37, 41 (1984)("A federal court may not issue the writ on the basis of a perceived error of state law.")

The Arizona Court of Appeals found that "Petitioner and Malone used deadly force against all six bank employees in order to prevent their resistance to the taking of money from the immediate presence of two employees, who had opened the vault and were still in it while Petitioner removed cash. Consequently, we conclude the trial court did not err in denying Petitioner's motion for judgment of acquittal, Rule 20, Ariz. R. Crim. P., 17 A.R.S. on five of the armed robbery counts. *See State v. Sullivan*, 187 Ariz. 599 (Ariz.App. 1996)." The Arizona statute in question and applied here was §13-1902(A), which provides:

> A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against

> any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

The Arizona Supreme Court has held that robbery requires "only that force be used 'against any person,' not necessarily only against the person dispossessed of the property." *State v. McGuire,* 131 Ariz. 93, 96 (1981) (upholding robbery conviction as to wife who was tied up in order to allow defendant to steal husband's property); *see also State v. Soto-Fong,* 187 Ariz. 186, 200 (1996) (use of force against three store employees to prevent defendant's taking of store property supported robbery counts as to all three, despite lack of evidence as to two employees that property was taken "from [their] person or immediate presence"), *cert.denied*, 520 U.S. 1231 (1997).

Petitioner relies on *State v. Strong,* 185 Ariz. 248 (App.1995). In that case, the defendant stole money from a restaurant, and was charged with theft and two counts of armed robbery.   That panel of the Arizona Court of Appeals held that, because "there was only one theft committed by defendant, i.e., the taking of the money from the restaurant safe," only one armed robbery occurred, regardless of the number of people threatened in the course of the robbery. *Id.* at 252.   On the contrary, relying on Arizona Supreme Court cases, *McGuire* and *Soto-Fong,* the *Riley* Court declined to follow *Strong*. *Riley,* 196 Ariz. at 45. The Arizona Court of Appeals, Div.  I, in *State v. Rutledge,* 197 Ariz.  389 (Ariz.App.  2000), also declined to follow *Strong*.

Petitioner's claim is purely a matter of state court application and interpretation of its own state sentencing statute. *Missouri*, 459 U.S. at 368.  The highest court in Arizona has interpreted and applied Section 13-1902(A) in the same manner and with the same result as the

*Riley* court.   This application is conclusive for purposes of federal habeas review.   *Gurley*, 421 U.S. at 208.   Accordingly, Petitioner has failed to establish that he is entitled to habeas relief on his claim that his sentences violated the constitutional prohibition against Double Jeopardy.

D.   *Petitioner's rights under the Double Jeopardy Clause of the Fifth Amendment were violated when the trial court ordered consecutive sentences for offenses that arose out of a single incident*

Petitioner maintains that the consecutive sentences imposed by the trial court amounted to a violation of the Double Jeopardy Clause and a violation of A.R.S. §13-116.   To support this position, Petitioner relies on the application of *State v. Williams*, 182 Ariz.  548 (Ariz.App.1995).

Respondents argue that the Arizona statute in question, Section 13-116, draws no distinction between single victims and multiple victims. *See State v.  Gordon*, 161 Ariz.  308, 313 (1989).   The state trial court found it proper to impose separate consecutive sentences for acts committed upon multiple victims on the theory that one taking of property in while six victims were held at gunpoint meant that a separate armed robbery was committed as to each victim.    Consequently, Respondents argue that ordering the sentences for the offenses against each named victim be served concurrently, with one another, but consecutively to sentences involving other victims was proper.   Finally, Respondents argue that this issue is solely one of application of state law, a matter not generally within the province of a federal habeas court.

As a matter of clearly established federal law, the United States Supreme Court has regularly deferred to state court interpretations of state statutes. "A State's highest court is the final judicial arbiter

of the meaning of state statutes." *Gurley,* 421 U.S. at 208. When a state court has made its own definitive determination as to the meaning of a state statute, federal courts give this finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive. *Id.*  The United States Supreme Court has held double jeopardy implications inapplicable to sentencing proceedings because the determinations at issue do not place a defendant in jeopardy for an offense. *Monge v. California,* 524 U.S. 721, 726 (1998).

The Arizona Court of Appeals found that Petitioner's argument on appeal was without merit, "because only one armed robbery occurred, into which all the aggravated assault and kidnaping counts merged."  Arizona state law requires that §13-116 is not applied to sentences imposed for a single act that harms multiple victims.  *See State v. Gordon*, 161 Ariz.  308, 314 (1989).  "Petitioner committed multiple acts upon multiple victims; accordingly, the trial court did not err in imposing consecutive sentences."  Arizona law clearly supports this position.

The applicable statute in Arizona is Section 13-116, as follows:

> An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.  An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other, to the extent the constitution of the United States or of this state require.

The trial court applied this statute and the appellate courts affirmed the application in upholding Petitioner's sentence.  Ordering that the sentences for the offenses against each named victim be served concurrently with one another, but consecutively to sentences involving

other victims, was proper under Arizona law. *See Gordon,* 161 Ariz. at 312 (citing *State v. Tinghitella,* 108 Ariz. 1, 3 (1971)).

Petitioner's "same-transaction" analysis, as employed in *Dixon*, 509 U.S. at 696, is without merit. Respondents correctly assert that the basis of Petitioner's claim is not that his consecutive sentences were improper under the *Blockburger v. United States*, 284 U.S. 299, 304 (1932), same-elements test. In *Missouri v. Hunter,* the Supreme Court reiterated its long-held position that where the legislature *clearly intended* "to impose multiple punishments, imposition of such sentences does not violate the Constitution." 459 U.S. at 368, quoting *Albernaz v. United States,* 450 U.S. 333, 344 (1981). "[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Id.* at 368. Thus, the Supreme Court concluded, where the legislature has made its intent clear, the legislature, not the courts, "prescribe the scope of punishments." *Id.* Here, the interpretation of the robbery statute is that the focus of the offense is the use or threatened use of force against a person.

In sum, this issue is purely one of the interpretation and application of well-settled state law. The appellate court here, nevertheless, did not commit constitutional error in applying the *Gordon* test to determine that the Petitioner's sentence complied with state law. *Missouri*, 459 U.S. at 368-69. Consequently, habeas relief is not available on this claim.

E. *Petitioner's rights under the Double Jeopardy Clause of the Fifth Amendment were violated when the trial court enhanced his sentences*

*for the use of a gun*

Petitioner charges that the trial court double counted and double charged the use of a gun during the offense, such that Double Jeopardy was violated, because aggravated assault and armed robbery both contain the necessary element of use of a deadly weapon.

Respondents argue that this claim is not cognizable in a federal habeas action because the decision rests on a state court interpretation of state law that is independent of the federal question under *Coleman*, 501 U.S. at 731-32. Further, Respondents argue that this claim is procedurally defaulted with no showing of cause and prejudice, because it was first raised with the trial court during the course of post-conviction relief proceedings. The Arizona Court of Appeals also denied the claim as precluded under Rule 32.2, Ariz. R. Crim. P. On June 21, 2001, the Arizona Court of Appeals filed a Memorandum Decision addressing the points raised with the state post-conviction court.

In contrast to the factual allegations made by Petitioner, the appellate court found that the trial court during sentencing expressly found six factors to support aggravation: severe emotional trauma to the victims; the high value of the property taken; petitioner's commission of the offenses while on probation; petitioner's prior criminal history; his failure to benefit from prior rehabilitative efforts and indications that he was a dangerous person. At the same time, during the sentencing hearing, the trial judge mentioned the use of a weapon during the course of the crime. The Court of Appeals resolved that upon post-conviction relief, the trial court had the opportunity to reconsider its sentencing decision but found that the sentences imposed were not based on inappropriate factors. There were many other aggravating factors that

did support the sentence, such that eliminating the consideration of the use of a gun, even though not specifically listed as an aggravating factor, was harmless.   The appellate court found no reason to remand to reduce the petitioner's sentence, because it has properly considered all relevant factors and not acted arbitrarily or capriciously. *State v. Fatty*, 150 Ariz.  587 (Ariz.App.1986).

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. In *Benton v. Maryland,* 395 U.S. 784 (1969), its protections were held applicable to the states through the Fourteenth Amendment. The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense. *See Witte,* 515 U.S. at 395-96; *United States v. DiFrancesco,* 449 U.S. 117, 129(1980); *Staatz v. Dupnik,* 789 F.2d 806, 808 (9th Cir. 1986).

The trial court did not list the Petitioner's use of a gun during sentencing as a factor to impose an aggravated sentence.   The judge mentions the use of a gun during the sentencing phase, but it is at the same time as he is describing the fear and trauma experienced by the victims; that it will be a "memory that they carry with them" and that they are not soldiers who take a job expecting risk of loss of life. Petitioner was convicted of armed robbery, but it is not listed by the trial court as a basis for aggravating the sentence.

The trial judge mentioned the use of a gun when he sentenced Petitioner, but to assert that use of the gun was a factor in aggravating the sentencing takes the comment out of context.   There is no factual basis for the claim that the Court applied the use of a gun as a separate

factor to impose an aggravated sentence.  Therefore, this claim fails for lack of a factual basis.

   F.  *Petitioner was punished in violation of his rights under the Fifth, Sixth and Fourteenth Amendments for failing to demonstrate remorse prior to his convictions and sentencing and for invoking his right to silence and to the presumption of innocence*

   Petitioner objects to the trial court referring during sentencing to Petitioner's lack of remorse.  Petitioner surmises that the trial court assumed there was lack of remorse because the Petitioner wanted to go to trial and did not testify.

   Respondents allege that this claim is factually inaccurate.  The trial court actually recognized Petitioner's remorse during the sentencing and applied it as a mitigating factor.  What the trial court specifically stated was: "in mitigation, Defendant's demeanor and attitude today in court with regard to his long overdue apology to the victims."

   Contrary to Petitioner's assertion, the trial court used the expression of remorse as a mitigating factor on behalf of Petitioner. In the end, it did not outweigh the aggravating factors.  Because this claim is factually inaccurate and without basis in the record, it lacks legal merit.

   G.  *Petitioner's right to due process under the Fourteenth Amendment and to be free from Double Jeopardy were violated when the trial court punished him for "failure to change his ways"*

   Petitioner claims that his sentence was improperly aggravated because he was on probation at the time of the offence.

- 24 -

Respondents argue that this claim is purely a matter of state law and not a cognizable claim for habeas review.

The trial court found aggravating factors that Petitioner had committed the offense while on federal probation and had a prior criminal history, as well as that prior attempts to rehabilitate him had failed. Petitioner's various probation officers testified during the sentencing phase. Evidence was submitted that in fact probation had been violated prior to the December 12, 1996 robbery and a probation violation warrant had issued for failure to contact the probation officer and to appear in Court, as well as resigning his job and moving without notifying probation. In addition, Petitioner had been involved with the Teen Challenge Program, but had resigned in 1996. The trial court was informed and understood that the Petitioner's prior conviction was not of a dangerous nature, but that he committed a dangerous offense while on probation.

Under Arizona law, failure to reform based on a review of past criminal activity and/or attempts to rehabilitate is a proper aggravating factor during the sentencing phase. *See* §13-702(C)(17)("Any other factors which the court may deem appropriate to the ends of justice."); *State v. Patton*, 120 Ariz. 386 (1978). Consequently, this claim does not present a cognizable basis for federal habeas relief.

H. *Petitioner's right to due process under the Fourteenth Amendment was violated when the trial court punished him on Counts 4, 10, and 16 for the impact that the crimes would continue to have on the victims*

Petitioner urges that the trial court improperly considered the impact of the crime on the victims in imposing a sentence. Petitioner

claims that this consideration is in violation of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Respondents note that the trial court listed six aggravating factors. Respondents take the position that even assuming one factor was improperly applied, there was no error in applying an aggravated sentence based on the cumulative consideration of five of the factors. Further, the Arizona Court of Appeals found that the victims' suffering as a group amounted to a proper aggravating factor.

Arizona state law allows the sentencing judge to consider physical, emotional and financial harm caused to the victim, as follows:

> §13-702C. For the purpose of determining the sentence pursuant to § 13-710 and subsection A of this section, the trier of fact shall determine and the court shall consider the following aggravating circumstances:
>
> 1. Infliction or threatened infliction of serious physical injury, except if this circumstance is an essential element of the offense of conviction or has been utilized to enhance the range of punishment under § 13-604.
>
> 2. Use, threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime, except if this circumstance is an essential element of the offense of conviction or has been utilized to enhance the range of punishment under § 13-604.
>
> 3. If the offense involves the taking of or damage to property, the value of the property so taken or damaged.
>
> * * *
>
> 9. The victim or, if the victim has died as a result of the conduct of the defendant, the victim's immediate family suffered physical, emotional or financial harm.

The first aggravating factor that the trial judge listed was the severe emotional trauma caused to the victims. The testimony at trial from the bank employees who were the victims of the robbery was that they were forced to lie face down on the floor, were tied up with their hands behind their backs, and had a 9-millimeter semiautomatic handgun with a

laser sight pointed at them throughout the robbery.  One employee was pulled by the hair to get keys and threatened that "if you want to spend fucking Christmas with your fucking family then you will open the ATM." Prior to the sentencing, one of the bank employee victims testified that "[w]hen she returned to work after the trial, she was sent home when she became terrified by the sound of a knock on the back door."

In sum, a sufficient factual basis existed for the state trial court to impose an aggravated sentence.  Further, the state trial court properly applied the state sentencing statute, Section 13-702(C)(9). Consequently, this claim raises no cognizable basis for federal habeas relief.

I. *Petitioner was deprived of effective assistance of appellate counsel*

Petitioner maintains that appellate counsel's performance during the direct criminal appeal was deficient under *Strickland v. Washington*, 466 U.S. 688 (1984).  Petitioner claims that the failure of appellate counsel to raise sentencing issues in the direct appeal caused prejudice to Petitioner; if appellate counsel had properly raised those issue on direct appeal, Petitioner's sentence would be much lighter.  Petitioner takes the position that the "Arizona Court assumed that appellate counsel's performance was deficient . . . " Petitioner argues that both the appellate court's resolution of the sentencing and the claim of ineffective assistance of appellate counsel based on the failure to raise those claims in the first instance are flawed.  Petitioner further argues that the failure of the state court to order an evidentiary hearing during the post-conviction proceedings is further evidence that the state courts' decisions are flawed.

- 27 -

Respondents argue that the Court of Appeals expressly applied the *Strickland* standard to Petitioner's allegations of ineffective assistance of appellate counsel and denied relief. Respondents also argue that there was no unreasonable application of state law here to reach that decision. Further, even if appellate counsel had raised the sentencing issues on direct appeal, the issues are meritless and the failure to do so did not prejudice Petitioner in the slightest.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland,* 466 U.S. at 686. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* The right to effective assistance of counsel applies to performance of both retained and appointed counsel without distinction. *See Cuyler v. Sullivan,* 446 U.S. 335, 344-45 (1980).

In order to prevail on an ineffective assistance of counsel claim, Petitioner must establish two elements. First, counsel's performance was deficient, meaning, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland,* 466 U.S. at 687-88. Secondly, Petitioner must establish that he was prejudiced by counsel's deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Under *Strickland,* "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Under the guidance of these established legal standards, the Court turns directly to the second prong of the *Strickland* test.

The Arizona Court of Appeals found no ineffective assistance of appellate counsel upon review of the post-conviction proceedings. The Court of Appeals found in its review of the post-conviction proceedings that, "[b]ecause the record is clear that even if appellate counsel had made petitioner's sentencing argument in the direct appeal, the result would have been the same, appellate counsel was not ineffective." It then approached the issue as "assuming, arguendo, that appellate counsel fell below a reasonable standard in failing to make petitioner's sentencing argument, it is clear from this record that Petitioner suffered no prejudice thereby." Consequently, Petitioner's argument that the Arizona Court of Appeals assumed ineffective assistance of appellate counsel is inaccurate and misleading.

Here, after a review of the record and the claims made by Petitioner, there is no basis for a finding that appellate counsel's actions undermined the proper functioning of the adversarial process. Petitioner's claims of sentencing error are meritless and any failure to address those claims on direct appeal resulted in no prejudice to Petitioner. All of this is relevant since not only must Petitioner prove his appellate counsel was ineffective, but that he was prejudiced by such ineffectiveness. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Of

particular importance, Petitioner must demonstrate a reasonable probability that, but for his appellate counsel's failure to appeal the sentencing issues, Petitioner would have prevailed on his appeal. *Id.* Petitioner has offered nothing more than his own conjectures as to the outcome of the appeal had the sentencing issues been raised. Conjecture cannot be said to rise to the level of "reasonable probability."

Petitioner's appellate counsel was not ineffective merely because the sentencing issues were not raised on direct appeal. *See Smith v. Murray*, 477 U.S. 527, 535-536 (1986). Indeed, an objective decision by appellate counsel not to raise a particular issue on appeal falls far short of meeting the rigorous standard for ineffective assistance of counsel as established by *Strickland*. *Id.* at 536. The process of weeding out weaker arguments on appeal in order to focus upon those that are more likely to prevail, "far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* Accordingly, Petitioner has not shown prejudice under the *Strickland* standard and has failed to establish that he is entitled to habeas relief on the basis of ineffective assistance of appellate counsel.

J. Petitioner is entitled to hearing in federal court

Petitioner argues that the issue of ineffective assistance of appellate counsel (for failure to address sentencing issues on direct criminal appeal) required a hearing before rendering a decision in the state post-conviction proceedings.  Petitioner posits that the state trial court completely ignored that claim and never addressed it during the post-conviction relief proceedings.  Then, after concluding that the sentencing claims were without merit, the Arizona Court of Appeals summarily found no ineffective assistance of appellate counsel in its

Memorandum Order.  Petitioner argues that he was never afforded a hearing on this issue at any level and should therefore be granted a hearing in this Court on issue of ineffective assistance of appellate counsel.

Respondents argue that pursuant to 28 U.S.C. §2254(e), Petitioner is not entitled to an evidentiary hearing.  Respondents claim that "[w]hile Petitioner pursued a hearing in state court, he failed to develop a sufficient claim of ineffective assistance.  The state courts found no colorable factual issues to be resolved."

The standard applied is, as follows:

Section 2254(e)

(1)-In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;  or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;  and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, Petitioner cited no basis for this Court to conclude that he raised a claim that relies on a new constitutional rule; or, the factual predicate could not have been previously discovered and the facts

underlying the claims would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the Petitioner guilty. The issue of ineffective assistance of appellate counsel was sufficiently addressed and properly resolved without a hearing during the post-conviction and appellate proceedings in the state courts. In sum, there are no grounds or facts asserted now that warrant this Court granting an evidentiary hearing on the issue of ineffective assistance of appellate counsel.

**CONCLUSION**

The Court finds that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the Petition for Writ of Habeas Corpus is DENIED.

DATED this 13th day of December, 2005.

David C. Bury
United States District Judge